UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JELBER D.O.,[1]

      Petitioner,

      v.

TIMOTHY S. ROBBINS, et al.,

      Respondents.

No. 1:26-cv-00471-TLN-DMC

**ORDER**

This matter is before the Court on Petitioner Jelber D.O.'s ("Petitioner") Motion for Temporary Restraining Order ("TRO"). (ECF No. 2.) For the reasons set forth below, Petitioner's motion is GRANTED and Respondents are ORDERED TO SHOW CAUSE why the Petition for Writ of Habeas Corpus (ECF No. 1) should not be granted.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

## I.    FACTUAL BACKGROUND[2]

The instant action arises from Petitioner's allegedly unlawful detention.  (*See* ECF Nos. 1, 2.)  On March 23, 2023, Petitioner arrived in the United States to seek asylum along with his now-spouse and their minor child.  (ECF No. 2 at 3.)  Members of the Colombian government made threats against his spouse due to her work with an opposition party.  (*Id.*)  That same day, Respondents arrested and detained Petitioner and his family.  (*Id.*)  After Petitioner underwent a short interview, Respondents released Petitioner and his family on March 26, 2023.  (*Id.*)  At that time, Respondents provided Petitioner with a Notice of Custody Determination (Form I-286) and an Order of Release on Recognizance (Form I-220a).  (*Id.*)  Both documents stated Petitioner was being released on his own recognizance pursuant to § 236 of the Immigration and Nationality Act ("INA").  (*Id.*)

Following his release on March 26, 2023, Petitioner and his family relocated to San Bernardino, California, where they moved in with Petitioner's relative.  (*Id.* at 4.)  Petitioner and his family remained in San Bernardino until June 2023, when they moved to Santa Clara, California.  (*Id.*)

At the time of his release on March 26, 2023, Petitioner was also served with a Notice to Appear ("NTA"), which indicated he had a master calendar hearing scheduled with the Los Angeles Immigration Court on April 27, 2023.  (*Id.*)  However, Respondents only commenced removal proceedings under 8 U.S.C. § 1229a on July 26, 2023.  (*Id.*)  On June 16, 2023, Petitioner changed venue to the San Francisco Immigration Court as a result of him moving to Santa Clara with his family.  (*Id.*)  He also had his case consolidated with his spouse's case.  (*Id.*)  A new master calendar hearing was scheduled for February 6, 2025, in the San Francisco Immigration Court.  (*Id.*)

As a condition of Petitioner's release, he was required to enroll in the Intensive Supervision Appearance Program ("ISAP"), a program operated by a private contractor that ICE uses to monitor released noncitizens.  (*Id.*)  At the time of his release on March 26, 2023,

---

[2]    The instant factual background is taken largely verbatim from Petitioner's Petition for Writ of Habeas Corpus.  (ECF No. 1.)

Petitioner was instructed to appear in person for a check-in at the ICE field office in San Bernardino, California on April 13, 2023. (*Id.*) On April 13, 2023, Petitioner appeared at the office as instructed and was provided with a phone with a monitoring app. (*Id.*) His ICE monitoring officer then scheduled him for monthly in-person visits and Petitioner was instructed to send selfie pictures to ICE on the app on a weekly basis. (*Id.*) When Petitioner and his family moved to Santa Clara, he informed ICE about his relocation. (*Id.*) ICE instructed Petitioner to check-in at the San Jose ISAP office monthly and to continue sending his selfie pictures on a weekly basis. (*Id.*) Petitioner continued to comply with all his monitoring requirements. (*Id.*)

In April 2024, after informing ICE, Petitioner and his family moved to Ventura, California. (*Id.* at 5.) ICE then instructed Petitioner to present himself in person at the ISAP field office in Camarillo, California, where officials placed a wrist monitor on him. (*Id.*) The wrist monitor contained a tracking monitor, and Petitioner was instructed to start taking and sending selfie pictures with the wrist monitor on a weekly basis. (*Id.*) ICE continued scheduling Petitioner for monthly in-person visits at the ISAP Camarillo office. (*Id.*)

To the best of his knowledge, until December 23, 2025, Petitioner complied with all ISAP requirements during the two years and nine months following his release. (*Id.*) On a few occasions, Petitioner would receive an error message when he tried to send selfie pictures. (*Id.*) Petitioner would then contact his ICE official by phone or went to the ISAP office in person to inform them about the app not working. (*Id.*) On March 17, 2025, ICE removed the wrist monitor and permitted him to continue sending selfie pictures through the app. (*Id.*) ICE officials informed Petitioner they would be contacting him at home by phone every 15 days and he was required to be home whenever the call took place. (*Id.*) Petitioner was also required to go to in-person check-in visits at the ISAP office every 15 days. (*Id.*)

Petitioner proceeded with working on his immigration case by retaining a legal services provider to prepare and file an asylum application on February 26, 2024. (*Id.*) Petitioner and his family also obtained employment authorization documents and social security cards. (*Id.*) On February 6, 2025, the San Francisco Immigration Court scheduled Petitioner and his family for a hearing on July 9, 2027. (*Id.* at 5–6.)

Petitioner started a new life in the United States.  (*Id.* at 6.)  Petitioner got married, worked full time with his spouse as delivery drivers to provide for their child, saved money, and made friends though the local soccer league.  (*Id.*)

On December 23, 2025, Petitioner presented himself at the ISAP office in Thousand Oaks, California, and was then instructed to present himself at the ICE field office in Camarillo.  (*Id.*)  When Petitioner arrived at the ICE Camarillo office, he was promptly detained by ICE officers.  (*Id.*)  Petitioner asked why he was being detained, and the ICE officer told him he failed to send selfie pictures though the app on unspecified dates and he had not been at home during one of the phone calls by ICE officials.  (*Id.*)  After being detained at a facility in Los Angeles for five days, Petitioner was eventually transferred to California City Detention Facility.  (*Id.*)  Petitioner now challenges the lawfulness of his civil detention and seeks release. (*See* ECF Nos. 1, 2.)

**II.      STANDARD OF LAW**

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

///

///

///

**III.    ANALYSIS**[3]

A.    Likelihood of Success on the Merits

Petitioner has established a likelihood of success on his claim that his detention violates his procedural due process rights.  (ECF No. 2 at 7–14.)  The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i.    Liberty Interest*

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").  "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)).  "Accordingly, a

---

[3]    The Court finds Petitioner has sufficiently met the requirements for issuing a TRO without notice. *See* Fed. R. Civ. P. 65(b).  Petitioner notified Respondents via email that he would be filing the motion and served copies of the documents.  (*See* ECF No. 2 at 3.)  *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025).  To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, the Court finds Petitioner gained a liberty interest after he was released on his own recognizance.  (ECF No. 2 at 3.)  Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release.  As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his asylum proceedings.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

### ii.    Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.  Petitioner asserts he has a strong interest in his liberty, as prior to his re-detention, he resided with his family in San Bernardino, Santa Clara, and Ventura for two years and nine

6

months.  (ECF No. 2 at 10.)  Petitioner also notes he lived a productive life by working as a delivery driver with his spouse, making a number of friends in his soccer league, and establishing himself in the community.  (*Id.*)  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention.  Petitioner asserts he did not and has not received a formal notice of the basis for his re-detention, much less any opportunity to respond to any allegations purporting to justify his re-detention, nor has he received a hearing before a neutral decisionmaker.  (ECF No. 2 at 11); *see also Manzanarez*, 2025 WL 3247258, at *4 (quoting *A.E. v. Andrews*, No. 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing.")).  Thus, the Court finds there is a serious likelihood Petitioner was likely erroneously deprived of his liberty interest.  Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." (cleaned up)).  Petitioner reiterates the foregoing in his motion.  (ECF No. 2 at 12.)  Therefore, on these facts, the Court cannot find any legitimate interest for Respondents to detain Petitioner.

///

Additionally, the cost and time of procedural safeguards are minimal here.  Notice and custody determination hearings are routine processes for Respondents.  Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal.  Moreover, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his asylum application than to continue to detain him.  (*Id.*); *see also Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents are required to provide notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129.  Here — where Petitioner has substantially complied with the conditions of his release — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty.

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to pre-deprivation notice and hearing to determine whether detention was warranted.  Respondents did not provide either.  Moreover, Petitioner asserts that Respondents have not provided any post-deprivation process.  Accordingly, with respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the merits.

    B.  Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2948.1 (2d ed.

2004)).  Finally, "unlawful detention certainly constitutes extreme or very serious damage, and that damage is not compensable in damages."  *Hernandez*, 872 F.3d at 999 (internal quotations omitted).  Petitioner asserts his detention violates the Constitution, and that these constitutional concerns counsel in favor of finding he has demonstrated irreparable harm.  (ECF No. 2 at 13.)  As Petitioner has stated a colorable due process claim based on his current detention, the Court agrees.  Thus, Petitioner sufficiently establishes irreparable harm.

> ### C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge."  *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities tips decidedly in Petitioner's favor as the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights."  *Melendres*, 695 F.3d at 1002.  Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  Petitioner asserts he faces weighty hardships, in the form of loss of liberty, separation from his friends, and the inability to pursue his education.  (ECF No. 2 at 14.)  The Court agrees.  In sum, Petitioner establishes the balance of equities tips in his favor and an injunction is in the public interest.

Accordingly, the Court GRANTS Petitioner's request for a TRO and orders Petitioner's immediate release on the same terms as he was released prior to his detention.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

//

//

//

**IV.     CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is GRANTED;

2. Respondents must IMMEDIATELY RELEASE Petitioner Jelber D.O. from custody. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing;

3. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where Respondents show: (a) material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present;

4. Respondents are ENJOINED from keeping Petitioner's documents and possessions, including passport, driver's license, EAD, mobile phone, and any other items belonging to Petitioner.  In order to return him to status quo prior to Respondents' detention, those items are to be returned to Petitioner;

5. Respondents are ORDERED TO SHOW CAUSE why the Petition for Writ of Habeas Corpus (ECF No. 1) should not be granted.  Respondents shall file responsive papers by **January 28, 2026**.  Petitioner may file a reply, if any, by **February 2, 2026**.  **The parties shall indicate in their briefing whether they waive a hearing**.  Fed. R. Civ. P. 65(b)(3). The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule;

6. Petitioner is ORDERED to immediately serve this Order and all documents filed in this case to date on Respondents, including a copy via email to: usacae.ecf2241-imm@usdoj.gov.  **Petitioner shall file a proof of such service by 10:00 a.m. on January 22, 2026**;

10

7. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the TRO on two days' notice to Petitioner.  Fed. R. Civ. P. 65(b)(4);

8. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); and

9. The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name and last initials.

IT IS SO ORDERED.

Date: January 21, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

11